# Exhibit A

# STATE OF NORTH CAROLINA

_____MECKLENBURG_____ County

| File No. |
| 24-CVS- **24CV011933-590** |

In The General Court Of Justice
☐ District  ☒ Superior Court Division

**Name And Address Of Plaintiff 1**
MEGAN TUREK-GREEN
c/o Ashley M. Coghill, Davis Hartman Wright LLP
209 Pollock St.
New Bern                    NC          28560

**Name And Address Of Plaintiff 2**

## GENERAL
## CIVIL ACTION COVER SHEET

☒ INITIAL FILING    ☐ SUBSEQUENT FILING

Rule 5(b) of the General Rules of Practice for the Superior and District Courts

### VERSUS

**Name And Address Of Defendant 1**
UNILEVER UNITED STATES, INC.
c/o The Corporation Trust Company Registered Agent
Corporation Trust Center 1209 Orange Street
Wilmington                  DE          19801

**Summons Submitted**    ☒ Yes    ☐ No

**Name And Address Of Defendant 2**

**Summons Submitted**    ☐ Yes    ☐ No

**Name And Address Of Attorney Or Party, If Not Represented**
(complete for initial appearance or change of address)
Ashley M. Coghill
Davis Hartman Wright LLP
209 Pollock St.
New Bern                    NC          28560

| Telephone No. (910) 795-4280 | Cellular Telephone No. |
| NC Attorney Bar No. 49134 | Attorney Email Address amc@dhwlegal.com |

☒ Initial Appearance in Case    ☐ Change of Address

| Name Of Firm Davis Hartman Wright LLP | Fax No. (910) 795-4280 |

**Counsel For**
☒ All Plaintiffs    ☐ All Defendants    ☐ Only: (list party(ies) represented)

☒ Jury Demanded In Pleading    ☐ Complex Litigation    ☐ Stipulate to Arbitration

### TYPE OF PLEADING

(check all that apply)

- ☐ Amend (AMND)
- ☐ Amended Answer/Reply (AMND-Response)
- ☐ Amended Complaint (AMND)
- ☐ Assess Costs (COST)
- ☐ Answer/Reply (ANSW-Response) (see Note)
- ☐ Change Venue (CHVN)
- ☒ Complaint (COMP)
- ☐ Confession Of Judgment (CNFJ)
- ☐ Consent Order (CONS)
- ☐ Consolidate (CNSL)
- ☐ Contempt (CNTP)
- ☐ Continue (CNTN)
- ☐ Compel (CMPL)
- ☐ Counterclaim (CTCL) Assess Court Costs
- ☐ Crossclaim (list on back) (CRSS) Assess Court Costs
- ☐ Dismiss (DISM) Assess Court Costs
- ☐ Exempt/Waive Mediation (EXMD)
- ☐ Extend Statute Of Limitations, Rule 9 (ESOL)
- ☐ Extend Time For Complaint (EXCO)
- ☐ Failure To Join Necessary Party (FJNP)

- ☐ Failure To State A Claim (FASC)
- ☐ Implementation Of Wage Withholding In Non-IV-D Cases (OTHR)
- ☐ Improper Venue/Division (IMVN)
- ☐ Including Attorney's Fees (ATTY)
- ☐ Intervene (INTR)
- ☐ Interplead (OTHR)
- ☐ Lack Of Jurisdiction (Person) (LJPN)
- ☐ Lack Of Jurisdiction (Subject Matter) (LJSM)
- ☐ Modification Of Child Support In IV-D Actions (MSUP)
- ☐ Notice Of Dismissal With Or Without Prejudice (VOLD)
- ☐ Petition To Sue As Indigent (OTHR)
- ☐ Rule 12 Motion In Lieu Of Answer (MDLA)
- ☐ Sanctions (SANC)
- ☐ Set Aside (OTHR)
- ☐ Show Cause (SHOW)
- ☐ Transfer (TRFR)
- ☐ Third Party Complaint (list Third Party Defendants on back) (TPCL)
- ☐ Vacate/Modify Judgment (VCMD)
- ☐ Withdraw As Counsel (WDCN)
- ☐ Other (specify and list each separately)

**NOTE:** All filings in civil actions shall include as the first page of the filing a cover sheet summarizing the critical elements of the filing in a format prescribed by the Administrative Office of the Courts, and the Clerk of Superior Court shall require a party to refile a filing which does not include the required cover sheet. For subsequent filings in civil actions, the filing party must indicate either a General Civil (AOC-CV-751), Motion (AOC-CV-752), or Court Action (AOC-CV-753) cover sheet.

AOC-CV-751, Rev. 3/19, © 2019 Administrative Office of the Courts
Electronically Filed Date: 5/12/2024 1:48 PM Mecklenburg County Clerk of Superior Court

| CLAIMS FOR RELIEF |
|---|

☐ Administrative Appeal (ADMA)
☐ Appointment Of Receiver (APRC)
☐ Attachment/Garnishment (ATTC)
☐ Claim And Delivery (CLMD)
☐ Collection On Account (ACCT)
☐ Condemnation (CNDM)
☐ Contract (CNTR)
☐ Discovery Scheduling Order (DSCH)
☐ Injunction (INJU)

☐ Limited Driving Privilege - Out-of-State
   Convictions (PLDP)
☐ Medical Malpractice (MDML)
☐ Minor Settlement (MSTL)
☐ Money Owed (MNYO)
☐ Negligence - Motor Vehicle (MVNG)
☒ Negligence - Other (NEGO)
☐ Motor Vehicle Lien G.S. Chapter 44A (MVLN)
☐ Possession Of Personal Property (POPP)

☒ Product Liability (PROD)
☐ Real Property (RLPR)
☐ Specific Performance (SPPR)
☒ Other *(specify and list each separately)*
   UDTPA
   Negligent Misrepresentation
   Fraud
   Breach of Warranty

| *Date* | *Signature Of Attorney/Party* |
|---|---|
| 03/12/2024 | *Ashley M. Cahill* |

**FEES IN G.S. 7A-308 APPLY**
Assert Right Of Access (ARAS)
Substitution Of Trustee (Judicial Foreclosure) (RSOT)
Supplemental Procedures (SUPR)

**PRO HAC VICE FEES APPLY**
Motion For Out-Of-State Attorney To Appear In NC Courts In A Civil Or Criminal Matter (Out-Of-State Attorney/Pro Hac Vice Fee)

| No. | ☐ **Additional Plaintiff(s)** |
|---|---|
| | |
| | |
| | |
| | |
| | |

| No. | ☐ **Additional Defendant(s)**  ☐ **Third Party Defendant(s)** | Summons Submitted |
|---|---|---|
| | | ☐ Yes ☐ No |
| | | ☐ Yes ☐ No |
| | | ☐ Yes ☐ No |
| | | ☐ Yes ☐ No |
| | | ☐ Yes ☐ No |

*Plaintiff(s) Against Whom Counterclaim Asserted*

| |
|---|
| |
| |

*Defendant(s) Against Whom Crossclaim Asserted*

| |
|---|
| |
| |

# STATE OF NORTH CAROLINA

__MECKLENBURG__ County

File No.
24-CVS-

In The General Court Of Justice
☐ District  ☒ Superior Court Division

*Name Of Plaintiff*
MEGAN TUREK-GREEN

*Address*
c/o Ashley M. Coghill, Davis Hartman Wright LLP

*City, State, Zip*
209 Pollock St.    New Bern        NC    28560

## CIVIL SUMMONS
☐ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)**

G.S. 1A-1, Rules 3 and 4

### VERSUS

*Name Of Defendant(s)*
UNILEVER UNITED STATES, INC.

*Date Original Summons Issued*

*Date(s) Subsequent Summons(es) Issued*

**To Each Of The Defendant(s) Named Below:**

| *Name And Address Of Defendant 1* | *Name And Address Of Defendant 2* |
|---|---|
| UNILEVER UNITED STATES, INC.<br>c/o The Corporation Trust Company, Registered Agent<br>Corporation Trust Center 1209 Orange Street<br>Wilmington                    DE    19801 | |

⚠ **IMPORTANT! You have been sued! These papers are legal documents, DO NOT throw these papers out! You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as possible, and, if needed, speak with someone who reads English and can translate these papers!**

**¡IMPORTANTE! ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legales. ¡NO TIRE estos papeles!**

**Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos documentos!**

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| *Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff)* | *Date Issued* | *Time* | |
|---|---|---|---|
| Ashley M. Coghill<br>Davis Hartman Wright LLP<br>209 Pollock Street<br>New Bern                    NC    28560 | 3/12/2024 | 2:17:16 pm  ☐ AM ☒ PM | |
| | *Signature*<br>/s/ Alexis Harper | | |
| | ☒ Deputy CSC    ☐ Assistant CSC    ☐ Clerk Of Superior Court | | |

☐ **ENDORSEMENT (ASSESS FEE)**
This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days.

*Date Of Endorsement*            *Time*            ☐ AM ☐ PM

*Signature*

☐ Deputy CSC    ☐ Assistant CSC    ☐ Clerk Of Superior Court

**NOTE TO PARTIES:** *Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

(Over)

## RETURN OF SERVICE

I certify that this Summons and a copy of the complaint were received and served as follows:

### DEFENDANT 1

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

### DEFENDANT 2

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid $ | Signature Of Deputy Sheriff Making Return |
|---|---|
| Date Received | Name Of Sheriff (type or print) |
| Date Of Return | County Of Sheriff |

AOC-CV-100, Side Two, Rev. 4/18
© 2018 Administrative Office of the Courts

NORTH CAROLINA

MECKLENBURG COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FILE NO. 24 CVS _____ -590

| | | |
|---|---|---|
| MEGAN TUREK-GREEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **VERIFIED** |
| | ) | **COMPLAINT** |
| UNILEVER UNITED STATES, INC., | ) | (***Jury Trial Demanded***) |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

NOW COMES the Plaintiff, Megan Turek-Green, through undersigned counsel, and complains of the Defendant as follows:

## PARTIES AND JURISDICTION

1.      The Plaintiff, Megan Turek-Green is over 18 years of age, a citizen and resident of Mecklenburg County, North Carolina, and under no legal disability.

2.      Upon information and belief, the Defendant, Unilever United States, Inc., (hereinafter referred to as "Unilever") is a corporation organized and existing under the laws of the State of Delaware and having a principal place of business at 700 Sylvan Avenue, Englewood Cliffs, New Jersey 07632.

3.      At all times relevant herein, Defendant Unilever purposefully engaged in business by developing, researching, producing, promoting, marketing, distributing, and selling various consumer health and beauty products, including those products included in the recall announced by Unilever on October 18, 2022 including certain Unilever-produced Dove Nexxus, Suave, TIGI, and TRESemmé dry shampoo aerosol products (hereinafter referred to as "the Recalled Products"),

throughout the United States, including North Carolina.

4.     Unilever has purposefully availed itself of the benefits and protections of the laws of the State of North Carolina by conducting said business in the State of North Carolina, including Mecklenburg County, where Plaintiff resides.

5.     Jurisdiction and venue of this matter are proper in the Superior Court of Mecklenburg County, North Carolina.

<u>FACTS AND ALLEGATIONS</u>

6.     On October 18, 2022, Unilever issued a press release on its website[1] stating: "Unilever United States today issued a voluntary product recall to the consumer level of select lot codes of dry shampoo aerosol products produced prior to October 2021 from Dove, Nexxus, Suave, TIGI (Rockaholic and Bed Head), and TRESemmé due to potentially elevated levels of benzene [the Recalled Products]." Unilever noted "[e]xposure to benzene can occur by inhalation, orally, and through the skin and it can result in cancers including leukemia and blood cancer of the bone marrow and blood disorders which can be life threatening."

7.     The recall press release ultimately stated that an internal investigation identified 19 Recalled Products with elevated levels of benzene: Dove Dry Shampoo Volume and Fullness; Dove Dry Shampoo Fresh Coconut; Dove Dry Shampoo Fresh and Floral; Dove Dry Shampoo Ultra Clean; Dove Dry Shampoo Invisible; Dove Dry Shampoo Detox and Purify; Dove Dry Shampoo Clarifying Charcoal; Dove Dry Shampoo Go Active; Nexxus Dry Shampoo Refreshing Mist; Nexxus Inergy Foam

---

[1] https://www.unileverusa.com/news/press-releases/2022/unilever-issues-voluntary-usrecall-of-select-dry-shampoos-due-to-potential-presence-of-benzene/ (last visited March 11, 2024).

Shampoo; Suave Dry Shampoo Hair Refresher; Suave Professionals Dry Shampoo Refresh and Revive; Tresemme Dry Shampoo Volumizing; Tresemme Dry Shampoo Fresh and Clean; Tresemme Pro Pure Dry Shampoo; Bed Head Oh Bee Hive Dry Shampoo; Bed Head Oh Bee Hive Volumizing Dry Shampoo; Bed Head Dirty Secret Dry Shampoo; and Bed Head Rockaholic Dirty Secret Dry Shampoo.

8.    Other than the recall, Unilever deemphasized the severe health risks of benzene contamination by stating that "benzene is ubiquitous in the environment" and that "an independent health hazard evaluation" had determined that "daily exposure to benzene in the recalled products at the levels detected in testing would not be expected to cause adverse health consequences." *See* Footnote 1.

9.    Various public health agencies, including the U.S. Centers for Disease Control and Prevention, the U.S. Food and Drug Administration, The World Health Organization, and the International Agency for Research on Cancer have documented and warned of the sever dangers and risks associated with exposure to benzene. These dangers include relatively minor reactions such as dizziness or rash as well as extremely severe consequences such as the development of cancer and immune system disorders. These physical risks vary depending on the method of exposure – inhalation, ingestion, or physical contact via clothing or the skin.

10.    The general instructions provided on the Recalled Products advise consumers to spray the contaminated product on the roots of their hair and massage into their scalp.

11.    By following the instructions provided on the Recalled Products,

Plaintiff repeatedly and unknowingly increased her exposure to the dangerous chemical benzene by both inhaling, and massaging and absorbing, benzene into the skin of her head and hands.

12.     Upon information and belief, Unilever knew or should have known the Recalled Products' contained a dangerous chemical – benzene – well in advance of the October 2022 recall.

13.     Upon information and belief, Unilever was required to subject the Recalled Products to rigorous quality assurance by Unilever's internal guidelines.

14.     Unilever was also required to subject the Recalled Products to rigorous quality assurance and safety checks according to applicable laws and regulations.

15.     Unilever had an obligation to inform consumers of the risks associated with the Recalled Products and to take reasonable steps to mitigate and ameliorate the risks associated with benzene use in the Recalled Products.

16.     In the alternative, if Unilever was not aware that the Recalled Products could be contaminated with benzene prior to the October 2022 recall, Unilever was reckless and negligent as a sophisticated developer and producer of personal care health and beauty products. The severe risks of benzene exposure and the possibility of benzene contamination during the manufacturing process of aerosol-based personal care products are well-known and have been understood for decades.

17.     Unilever is a large multi-national developer, researcher, producer, promoter, marketer, distributor, and seller of various consumer health and beauty products. Unilever owns over 400 brands and sells those products in at least 190

countries. Unilever self-reported worldwide sales of approximately $61.9 billion in 202 with about 42% of that revenue being derived from personal care products such as the Recalled Products.

18.     As a sophisticated producer of consumer personal care products, Unilever was in the best position to easily and effectively identify and avoid the Recalled Products' benzene contamination. Unilever produces many aerosol personal care products, including other aerosol hair care products, that do not contain benzene. Likewise, Unilever's competitors produce aerosol dry shampoo products that do not contain benzene.

19.     Aerosols contain volatile hydrocarbons, like butane or isobutane, as propellants. These propellants are derived from crude oil and manufactured in oil refineries where a variety of other hydrocarbons, including benzene, are produced. Because the chemicals are derived from the same sources in the same facilities, there is high potential for benzene contamination in the processing of butane. Unilever, a large, sophisticated corporation in the business of manufacturing, distributing, and selling products containing aerosol propellants such as butane, knew or should have known of the risks of benzene contamination.

20.     Benzene is not listed on the Recalled Products' labels as either an active or inactive ingredient, nor is there any warning about the inclusion (or even potential inclusion) of benzene in the Recalled Products.

21.     Since at least 1974, human studies have confirmed benzene as a carcinogen capable of causing damage to the bone marrow and red blood cells and

leukemia. In 2009, the finding that benzene was a human carcinogen was reaffirmed by the International Agency for Research on Cancer (a semi-autonomous part of the World Health Organization otherwise known as the IARC) for acute myeloid leukemia and acute nonlymphocytic leukemia; acute lymphocytic leukemia; chronic lymphocytic leukemia; multiple myeloma; and non-Hodgkin lymphoma. These groups classify benzene as a Group 1 compound that is carcinogenic to humans.[2]

22.     In 2018, the IARC updated its findings to include repeat confirmation of the carcinogenic properties of benzene in humans and experimental animals stating "benzene is metabolically activated to electrophilic metabolites; induces oxidative stress and associated oxidative damage to DNA; is genotoxic; alters DNA repair or causes genomic instability; is immunosuppressive; alters cell proliferation, cell death, or nutrient supply; and modulates receptor-mediated effects."[3]

23.     Similarly, The Centers for Disease Control and Prevention credits long-term exposure to benzene in causing harmful health effects such as harming bone marrow function, causing immune system damage, tissue injury, cancer, and leukemia.[4]

24.     The U.S. Department of Health and Human Services has also credited benzene exposure with causing cancer, including leukemia, in humans.[5]

25.     The FDA instructs that there is no safe level of benzene, and thus it

---

[2] *See* WORLD HEALTH ORGANIZATION PREVENTING DISEASE THROUGH HEALTHY ENVIRONMENTS: *Exposure to Benzene: A Major Public Health Concern*, (2019).
[3] *See Benzene*, IARC MONOGRAPHS ON THE EVALUATION OF CARCINOGENIC RISKS TO HUMANS, Volume 120 (2018).
[4] See CDC, Facts About Benzene (2018), https://emergency.cdc.gov/agent/benzene/basics/facts.asp (last visited March 11, 2024).
[5] *Id.*

- 6 -

"should not be employed in the manufacture of drug substances, excipients, and drug products because of [its] unacceptable toxicity." FDA guidance provides that "if [benzene's] use is unavoidable in order to produce a drug product with a significant therapeutic advance, then [its] levels should be restricted" to 2 parts per million ("ppm").[6]

26.     The National Institute for Occupational Safety and Health ("NIOSH") recommends protective equipment be worn by workers expecting to be exposed to benzene at concentrations of 0.1 ppm for over 10 hours and defines "inhalation, skin absorption, ingestion, skin and/or eye contact" as exposure routes.[7]

27.     Benzene exposure from body sprays, such as the Recalled Products, is especially troubling because the spray is applied directly onto the skin, with the remnants in the air likely to be inhaled by the user and absorbed into their lungs. Thus, even a relatively low concentration limit can result in very high total benzene exposure.

28.     Despite substantial scientific research and study by numerous reputable international and national health and public safety organizations and regulatory agencies, Unilever downplayed the exposure risk to consumers of the Recalled Products. *See* Footnote 1.

29.     Upon information and belief, to the extent Unilever disclaims knowledge of the Recalled Products' benzene contamination prior to the October 2022 recall,

---

[6] FDA alerts drug manufacturers to the risk of benzene contamination in certain drugs | FDA (last visited March 11, 2024).
[7] CDC - NIOSH Pocket Guide to Chemical Hazards - Benzene (last visited March 11, 2024).

Unilever gained actual knowledge of that risk at least as early as July 2021. Around that time, Unilever's top competitors began recalling aerosol products due to the presence of benzene and faced litigation based on those recalls.

30.     Moreover, in November 2021, Valisure tested for benzene in various types of antiperspirants utilizing gas chromatography and detection by mass spectrometry ("GC-MS") instrumentation that allows mass spectral separation. 54% of samples tested by Valisure contained detectable benzene and some batches contained up to nine times the conditionally restricted FDA concentration limit of 2 parts per million (ppm). The Valisure testing confirmed the presence of benzene in dozens of aerosol antiperspirants and sunscreens, including two Suave 24-Hour Protection aerosol spray anti-perspirants manufactured and sold by Unilever, and submitted a citizens' petition to the Food and Drug Administration describing those findings, including that two of Unilever's Suave antiperspirants contained benzene.

31.     Throughout 2021, the risks of benzene contamination became apparent to all producers of aerosol-based personal care products, including Unilever, as there were at least seven nationwide recalls of aerosol-based personal care products between 2021 and 2022, including dry shampoos, that were produced and sold by leading health and beauty personal care companies, including Johnson & Johnson Consumer, Inc., The Procter & Gamble Company, and Unilever itself. Unilever ultimately faced numerous lawsuits arising from the Suave contamination beginning in late 2021.

32.     Despite having actual knowledge as early as July 2021 of the

contamination of the Recalled Products with benzene, as well as the known risks and dangers associated with benzene exposure, Unilever chose to put profits ahead of people by delaying notice of the contamination and recall of the affected products until October 18, 2022.

33. Unilever's website emphasizes a "commitment to product safety and quality" when providing "high-quality products that are safe for their intended use" and which "meet all applicable standards and regulation." According to Unilever:

> Our long-established Safety & Environmental Assurance Centre (SEAC) works with teams across Unilever to assess the safety and environmental sustainability of our products. The Centre also evaluates the processes used to manufacture our products.
>
> We design safety and sustainability into our products and manufacturing processes using the best science available.[8]

34. Unilever's consumers, including Plaintiff, relied on Unilever to utilize their superior position and sophisticated and direct knowledge of the ingredients included in their products, and the risks and dangers associated with the use of those products, to provide them with complete, factual, and honest information concerning the safety and benefits of the Recalled Products.

35. Instead, upon information and belief, Unilever provided false, misleading, and incomplete representations of the safety of the Recalled Products to consumers, including Plaintiff, despite knowing and/or being in the best position to know the risks and dangers associated with the ingredients, including benzene, in the Recalled Products.

---

[8] https://www.unilever.com/planet-and-society/responsible-business/product-safety-and-quality/ (last visited March 11, 2024).

- 9 -

36.     After reviewing the product labels, Plaintiff purchased a number of dry shampoo products, including from the Recalled Products: Dove Dry Shampoo, Volume and Fullness (7.3 oz), Dove Dry Shampoo, Coconut (7.3 oz), Tresseme Dry Shampoo Volumizing (7.3 oz), and Bed Head Dirty Secret Dry Shampoo (2.1 oz), multiple times over the years leading up to the October 18, 2022 recall.

37.     Plaintiff used the products from the Recalled Products list in accordance with the instructions included on their packaging, including spraying the products directly onto her scalp and massaging in the products with her hands. During this time, Plaintiff was usually located in the smaller confines of her home bathroom and did not hold her breath or take other actions to avoid inhaling the product as the products packaging and labels did not include any such instruction or warning.

38.     Prior to October 18, 2022, Plaintiff had no knowledge that the Recalled Products contained the dangerous chemical benzene or that the inclusion of benzene made the products risky, dangerous, and unsafe for use in accordance with the packaging instructions. The Recalled Products used by Plaintiff did not include benzene on the ingredients lists nor did they include any warning that the products contained, or could contain, benzene or the potential adverse health effects associated with benzene exposure in using the products as directed. Plaintiff would not have purchased or used the Recalled Products if she had known of the presence of, and risks and dangers associated with, the inclusion of benzene in the Recalled Products.

39.     Plaintiff has complied with all conditions precedent to bringing this Complaint and, as a direct and proximate cause of the actions of Defendant, Plaintiff

is entitled to recover from Defendant an amount exceeding $25,000 in compensation for the injuries directly caused by the repeated and hazardous exposure to benzene Plaintiff suffered and resulting cancer diagnosis and treatment.

### FIRST CAUSE OF ACTION
Breach of Implied Warranty

40.     Plaintiff hereby re-states the allegations of paragraphs 1-39 and incorporates the same as if fully set forth herein.

41.     Defendant is a merchant of consumer goods and was at all relevant times engaged in the business developing, researching, producing, promoting, marketing, distributing, warranting, and selling various consumer health and beauty products, including the Recalled Products.

42.     The Recalled Products are "goods" under the relevant laws, and Unilever knew or had reason to know of the specific use for which the Recalled Products, as goods, were purchased.

43.     The implied warranty of merchantability included with the sale of the Recalled Products means that Unilever guaranteed that the Products would be fit for the ordinary purposes for which dry shampoos are used and sold (including touching up, freshening, and removing dirt and oil from hair) and were not otherwise injurious to consumers. The implied warranty of merchantability is part of the basis for the benefit of the bargain between Unilever and Plaintiff.

44.     Unilever breached the implied warranty of merchantability because the Recalled Products are not fit for their ordinary purpose of providing reasonably reliable and safe use as hair care products because the Recalled Products contain

- 11 -

benzene, a known and dangerous carcinogen.

45.     Unilever's implied warranty applies to the purchaser of the Recalled Products, creating privity between Unilever and Plaintiff.

46.     Plaintiff is an intended beneficiary of Unilever's warranties and its sale through retailers. Unilever's retailers were not intended to be the ultimate consumers of the Recalled Products and have no rights under the warranty agreements. Unilever's warranties were designed for and intended to benefit the consumer only, including Plaintiff.

47.     Unilever has been provided sufficient notice of its breaches of implied warranties associated with the Products. Upon information and belief, Unilever was put on actual or constructive notice of its breaches through its own product testing of its cosmetic products, including the Recalled Products; product testing by consumer advocacy groups of Unilever's cosmetic products; reports of similar benzene contaminations in Unilever's other cosmetic products and competitors' cosmetic products; and complaints from consumers and consumer advocacy groups regarding benzene contamination in Unilever's cosmetic products.

48.     Had Plaintiff known the Recalled Products were contaminated, or potentially contaminated, with benzene, Plaintiff would not have purchased them.

49.     As a direct and proximate cause of the actions of Defendant, Plaintiff has suffered injuries damages in an amount exceeding $25,000.

## SECOND CAUSE OF ACTION
Fraud

50.     Plaintiff hereby re-states the allegations of paragraphs 1-49 and

incorporates the same as if fully set forth herein.

51.     Unilever had a duty to disclose material facts to Plaintiff given their relationship as contracting parties and intended users of the Recalled Products. Unilever also had a duty to disclose material facts to Plaintiff, namely that it was in fact manufacturing, distributing, and selling harmful Recalled Products unfit for human use, because Defendant had superior knowledge and sophistication such that the transactions without the disclosure were rendered inherently unfair.

52.     Since at least July of 2021, Unilever was aware of the dangers inherently in exposure to benzene and knew that the Recalled Products either contained or could contain benzene. Numerous recalls, including recalls of other Unilever products, put Unilever on actual or constructive notice that adulterated and misbranded products were being investigated for contamination with carcinogens, including benzene.

53.     During this time, Plaintiff was actively using certain of the Recalled Products without knowing they contained dangerous levels of benzene.

54.     Unilever failed to comply with its duty to disclose these material facts.

55.     Unilever intentionally, fraudulently, and actively concealed the danger and risks involved in using the Recalled Products by failing to disclose the contamination, and potential for contamination, of the Recalled Products by benzene and by continuing to allow Plaintiff and other consumers to use the Recalled Products believing they were safe for their intended use.

56.     Plaintiff reasonably relied on Unilever to disclose any such material

- 13 -

facts related to the Recalled Products. Unilever failed to do so and Plaintiff relied on Unilever's silence on the issue, as well as the usage instructions and ingredient lists contained on the Recalled Products, in determining that the Recalled Products were safe for their intended use.

57.     Had Plaintiff known the Recalled Products were contaminated, or potentially contaminated, with benzene, Plaintiff would not have purchased them.

58.     As a direct and proximate cause of the actions of Defendant, Plaintiff has suffered injuries damages in an amount exceeding $25,000.

**THIRD CAUSE OF ACTION**
Negligence

59.     Plaintiff hereby re-states the allegations of paragraphs 1-58 and incorporates the same as if fully set forth herein.

60.     Unilever had a duty to Plaintiff to use reasonable care in the developing, researching, producing, promoting, marketing, distributing, warranting, and selling of various consumer health and beauty products, including the Recalled Products.

61.     Unilever breached that duty by:

    a.  Failing to exercise ordinary care in preventing contamination of the Recalled Products with benzene;

    b.  Failing to warn of the potential for the Recalled Products to be contaminated with, or to contain, benzene;

    c.  Failing to warn of the health risks associated with use of products containing benzene;

d.  Failing to use ordinary care in producing aerosol products such as to avoid inadvertently producing products containing benzene;

e.  Failing to detect benzene contamination in the Recalled Products;

f.  Failing to appropriately label the Recalled Products in accordance with regulatory requirements and other applicable laws;

g.  Failing to act with reasonable care in warning of the benzene contamination in the Recalled Products in a timely manner;

h.  Failing to recall the Recalled Products in a timely manner;

i.  Failing to provide Recalled Products that were fit for their intended use to Plaintiff and the general public;

j.  Failing to remedy the contamination of the Recalled Products in timely manner;

k.  Failing to comply with all applicable testing and regulatory safety requirements in producing and manufacturing the Recalled Products;

l.  Otherwise failing to act in a reasonable and prudent manner under the circumstances in ways to be determined at a trial of this matter.

62.  As a result of Unilever's actions in breaching their duties to Plaintiff, Plaintiff has suffered personal injuries and damages.

63.  Plaintiff's injuries were a direct and proximate result of Unilever's actions in breaching their duties.

64.  As a result of Unilever's failures, Plaintiff was exposed to a dangerous carcinogenic chemical – benzene – contained in the Recalled Products.

65. Upon information and belief, as a direct result of this repeated exposure, Plaintiff was diagnosed with Acute Lymphoblastic Leukemia in March of 2021. She has since undergone invasive and debilitating treatment for her cancer including a stem-cell transplant and chemotherapy. Plaintiff has great difficulty in her activities of daily living as a result of peripheral neuropathy and atrophy, excessive and persistent fatigue, gastrointestinal issues, psychological trauma, and other complications associated with her cancer. Plaintiff is unable to work and lives with the constant worry, pain, and functional difficulties that inherently come with a cancer diagnosis.

66. At the time of her diagnosis, Plaintiff was a single mother of three children, two of which were minors. Plaintiff's adult child had to uproot her life in another state to help take care of her mother and two siblings. Plaintiff's adult child continues to care for her mother and two siblings since her mother is unable to work or care for herself and her home the same as she was able to before her cancer diagnosis.

67. Unilever's actions and inactions were at best carless and reckless and at worst intentional and wanton.

68. As a direct result of Unilever's negligence, Plaintiff has suffered serious injuries, mental anguish, and pain and has caused Plaintiff to incur medical expenses and other monetary damages.

69. As a direct and proximate cause of the actions and inaction of Defendant, Plaintiff has suffered injuries damages in an amount exceeding $25,000.

- 16 -

## **FOURTH CAUSE OF ACTION**
### Unfair and Deceptive Trade Practices

70.     Plaintiff hereby re-states the allegations of paragraphs 1-69 and incorporates the same as if fully set forth herein.

71.     Unilever was engaged in business in or affecting commerce by developing, researching, producing, promoting, marketing, distributing, warranting, and selling various consumer health and beauty products (including the Recalled Products) all over the U.S., including North Carolina.

72.     The actions and inaction of Unilever described herein in intentionally and negligently failing to warn Plaintiff of the risks associated with the use of the Recalled Products, failing to timely take action to remedy the contamination of the Recalled Products, failing to appropriately label the Recalled Products, and Unilever's other actions constitute unfair and deceptive trade practices in violation of Chapter 75 of the North Carolina General Statutes.

73.     As a direct and proximate cause of the actions and inaction of Defendant, Plaintiff has suffered injuries damages in an amount exceeding $25,000.

## **SIXTH CAUSE OF ACTION**
### Punitive Damages

74.     Plaintiff hereby re-states the allegations of paragraphs 1-72 and incorporates the same as if fully set forth herein.

75.     Unilever's conduct, as described herein, consisted of egregiously wrongful actions consisting of fraud and willful or wanton conduct by intentionally concealing and misrepresenting the safety of the Recalled Products, failing to timely

remedy the contamination of the Recalled Products, failing to appropriately label the Recalled Products, and Unilever's other actions.

76.     As a direct and proximate cause of the actions and inaction of Defendant, Plaintiff has suffered injuries damages in an amount exceeding $25,000 and is entitled to punitive damages against Defendant pursuant to North Carolina General Statues Section 1D-35.

**FIFTH CAUSE OF ACTION (IN THE ALTERNATIVE)**
Unjust Enrichment

77.     Plaintiff hereby re-states the allegations of paragraphs 1-76 and incorporates the same as if fully set forth herein.

78.     Plaintiff was a paying consumer of Defendant's Recalled Products.

79.     Plaintiff was not provided with the Recalled Products gratuitously by Defendant.

80.     Defendant accepted the amounts paid to it by Plaintiff in the form of revenue from sales of the Recalled Products.

81.     The revenue gained by Defendant from Plaintiff was obtained fraudulently, namely by selling and accepting compensation for products labeled and marketed as safe for their intended use when, in fact, the Recalled Products were not fit for human use and were not labeled to appropriately warn of the dangers associated with using the products in accordance with the labeled instructions.

82.     Unilever has been unjustly enriched in the form of revenue generated from sales of the Recalled Products.

- 18 -

83.     In the alternative to the claims for relief stated above, Defendant has been unjustly enriched, to the detriment of Plaintiff, and Plaintiff is entitled to recover damages in an amount exceeding $25,000 from Defendant in the form of the non-gratuitous benefits and revenue conferred on it by Plaintiff.

**WHEREFORE**, Plaintiff respectfully requests that:

1.      Plaintiff have and recover damages from Defendant in an amount exceeding $25,000;

2.      Plaintiff have and recover punitive damages, or a trebling of Plaintiff's compensatory damages;

3.      The Plaintiff have a jury trial upon all issues so triable; and

4.      The Court grant Plaintiff such further relief it deems just and proper.


This the 12th day of March, 2024.


DAVIS HARTMAN WRIGHT, LLP


By:     _Ashley M. Coghill_
        ASHLEY M. COGHILL
        N.C. State Bar No.  49134
        209 Pollock Street
        New Bern, NC 28560
        Telephone: (910) 795-4280
        Facsimile: (910) 795-4280
        E-mail: amc@dhwlegal.com
        *Attorney for Plaintiff*

- 19 -

NORTH CAROLINA

Davidson _____ COUNTY

      Megan Turek-Green, being first duly sworn, disposes and says that she is the plaintiff in the above entitled action, that she has read the foregoing Complaint, that the same is true of her own knowledge, except as to matters and things stated on information and belief and as to those matters and things she fairly believes it to be true.

_____
Megan Turek-Green

Sworn to and subscribed before me this 12th day of March, 2024.

_____
Notary Public (Signature)

My Commission Expires: 07/13/2028

Chasity Small
NOTARY PUBLIC
Davidson County, NC
My Commission Expires July 13, 2028

- 20 -

# STATE OF NORTH CAROLINA

_____MECKLENBURG_____ County

File No.

24-CVS-

In The General Court Of Justice
☐ District ☒ Superior Court Division

| | |
|---|---|
| *Name Of Plaintiff*<br>MEGAN TUREK-GREEN | |
| *Address*<br>c/o Ashley M. Coghill, Davis Hartman Wright LLP | **CIVIL SUMMONS**<br>☒ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)** |
| *City, State, Zip*<br>209 Pollock St.    New Bern         NC      28560 | |
| **VERSUS** | G.S. 1A-1, Rules 3 and 4 |
| *Name Of Defendant(s)*<br>UNILEVER UNITED STATES, INC. | *Date Original Summons Issued*<br>03/12/2024 |
| | *Date(s) Subsequent Summons(es) Issued* |

**To Each Of The Defendant(s) Named Below:**

| *Name And Address Of Defendant 1*<br>UNILEVER UNITED STATES, INC.<br>c/o The Corporation Trust Company, Registered Agent<br>Corporation Trust Center 1209 Orange Street<br>Wilmington                                    DE      19801 | *Name And Address Of Defendant 2* |
|---|---|

⚠ **IMPORTANT! You have been sued! These papers are legal documents, DO NOT throw these papers out! You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as possible, and, if needed, speak with someone who reads English and can translate these papers!**

**¡IMPORTANTE! ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legales. ¡NO TIRE estos papeles!**
**Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos documentos!**

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| | |
|---|---|
| *Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff)*<br>Ashley M. Coghill<br>Davis Hartman Wright LLP<br>209 Pollock Street<br>New Bern                                    NC      28560 | *Date Issued*  6/7/2024    *Time* 12:03:31 pm ☐ AM ☐ PM |
| | *Signature*  /s/ Norris Browne |
| | ☒ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court |

| | |
|---|---|
| ☐ ENDORSEMENT (ASSESS FEE)<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | *Date Of Endorsement*        *Time*        ☐ AM ☐ PM |
| | *Signature* |
| | ☐ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court |

**NOTE TO PARTIES:** *Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

(Over)

**RETURN OF SERVICE**

I certify that this Summons and a copy of the complaint were received and served as follows:

## DEFENDANT 1

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

## DEFENDANT 2

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid $ | Signature Of Deputy Sheriff Making Return |
|---|---|
| Date Received | Name Of Sheriff (type or print) |
| Date Of Return | County Of Sheriff |