UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| MEGAN TUREK-GREEN, | ) |
| Plaintiff, | ) ) |
| v. | ) ) Case No.: 3:24-cv-00645 |
| UNILEVER UNITED STATES, INC., | ) ) |
| Defendant. | ) ) ) |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Defendant Unilever United States, Inc. ("Unilever") respectfully moves to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6), and submits the following memorandum in support.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Megan Turek-Green alleges that she developed leukemia after being exposed to benzene from using dry shampoo products sold by Unilever. However, benzene is not—and never was—an ingredient in the dry shampoo products, and the complaint fails to allege that the cans of dry shampoo Turek-Green used were tested or found to contain benzene. Indeed, the complaint contains <u>no</u> facts showing that Turek-Green ever used a Unilever dry shampoo product that contained benzene. Instead, Turek-Green brings this lawsuit because Unilever, out of an abundance of caution, recalled certain lots (or batches) of dry shampoo products manufactured before October 2021 after learning that some batches of propellant used in the products contained *de minimis* levels of benzene impurities, even though the levels were far below those that would pose any health risk. Unilever's recall is not evidence that any product Turek-Green used contained benzene. Other federal courts have dismissed substantially similar

actions when the plaintiff failed to allege she used a product from a contaminated batch. The Court should dismiss this action for the same reason, and for the additional reasons summarized below.

First, even if the complaint plausibly alleged that the products contained benzene, it does not allege facts showing that any level of benzene to which Turek-Green could potentially have been exposed was capable of causing her illness. Turek-Green fails to allege how often she used the products, over what time period, or how much benzene the products used allegedly contained, much less tie these facts to scientific literature about benzene.

Second, the complaint fails to plead fraud. Turek-Green does not allege that Unilever learned about a risk of benzene contamination until several months *after* she was diagnosed with leukemia; the complaint fails to show that Unilever and Turek-Green were in a relationship of trust such that Unilever had a duty to disclose information; and it fails to plead fraud with specificity as required under Rule 9(b).

Third, the negligence claim fails because, given Turek-Green's own allegation that Unilever did not learn of the contamination risk until after her injury, an earlier recall of the dry shampoo products would not have prevented Turek-Green's injury, and any claim that Unilever failed to comply with labeling, testing, and safety regulations is both inadequately pleaded and impliedly preempted.

Fourth, the UDTPA claim fails because it is premised on the same flawed allegations as the fraud and negligence claims and fails to allege any "egregious" or "aggravating" circumstances.

Fifth, the complaint fails to state an unjust-enrichment claim because this claim incorporates the other allegations in the complaint, including a contractual relationship involving

2

the sale of goods; the complaint fails to show that Unilever was unjustly enriched; and Turek-Green has not shown that her legal remedies are inadequate.

Finally, the complaint fails to plead facts supporting a claim for punitive damages.

## FACTUAL BACKGROUND

Unilever is home to many of America's most trusted brands of consumer goods, including aerosol dry shampoo products under the brands Dove, Nexxus, Suave, TIGI, and TRESemmé. *See* Compl. ¶ 3. On October 18, 2022, Unilever recalled selected lots (or batches) of dry shampoo products from the above brands that were produced before October 2021 due to *potentially* elevated levels of benzene.[1] Compl. ¶ 6. Benzene is not an ingredient in the products. As noted in Unilever's public announcement of the voluntary recall, the company's internal investigation identified the propellant in the products as the source of the benzene impurities.[2] Unilever recalled the selected lots out of an abundance of caution.[3]

Benzene is "widely used in the United States" and is among the top chemicals in terms of production volume.[4] As a result of its pervasiveness, "[t]he entire population of the United States is exposed to small quantities of benzene[.]" *Indus. Union Dept., AFL-CIO v. Am. Petroleum Inst.*, 448 U.S. 607, 615 (1980). Benzene is found in, among other things, crude oil, gasoline, and

---

[1] Contrary to the complaint, the recall notice did not state that all of the recalled products contained elevated benzene levels, or any benzene for that matter. *See* note 2, *infra*.

[2] *Unilever Issues Voluntary U.S. Recall of Select Dry Shampoos Due to Potential Presence of Benzene*, https://www.unileverusa.com/news/press-releases/2022/unilever-issues-voluntary-us-recall-of-select-dry-shampoos-due-to-potential-presence-of-benzene/ (last visited July 15, 2024). (cited in Compl. ¶ 6 n.1). The Court may consider the recall notice because it is incorporated by reference in the complaint and integral to Plaintiff's claims. *Epcon Homestead, LLC v. Town of Chapel Hill*, 62 F.4th 882, 885 (4th Cir. 2023).

[3] *See* note 2, *supra*.

[4] CDC, *Facts About Benzene*, https://emergency.cdc.gov/agent/benzene/basics/facts.asp (last visited July 15, 2024) (cited in Compl. ¶ 23 n.4).

cigarette smoke, as well as glues, paints, and detergents. Outdoor air contains low benzene levels from tobacco smoke, gas stations, automobile exhaust, and industrial emissions. Indoor air generally contains even higher benzene levels. A major source of benzene exposure is tobacco smoke.[5]

Plaintiff Megan Turek-Green alleges that she bought dry shampoo products, including Dove Dry Shampoo Volume and Fullness, Dove Dry Shampoo Coconut, TRESemmé Dry Shampoo Volumizing, and Bed Head Dirty Secret Dry Shampoo, "multiple times over the years leading up to the October 18, 2022 recall." Compl. ¶ 36. The complaint is unclear whether "multiple times" refers to Turek-Green's purchase of dry shampoo products generally, Unilever's brands, or these specific Unilever products. Nor does the complaint provide any indication as to what "multiple times" means in terms of frequency, or what length of time is meant by "over the years." The complaint further asserts, without any factual support, that the products Turek-Green used contained benzene and that she developed acute lymphoblastic leukemia ("ALL") as a result of exposure to benzene in the products. *Id.* ¶¶ 64-65. Turek-Green complains that the product labels did not include benzene on the ingredient list or a warning about benzene. *Id.* ¶ 20. She further asserts that some of Unilever's competitors began recalling aerosol products due to benzene contamination around July 2021, and therefore Unilever "gained actual knowledge" of a risk of contamination at that time. *Id.* ¶ 29.

In November 2021, a company called Valisure tested numerous body sprays and found benzene present in certain products, including samples of two Suave aerosol antiperspirants sold by Unilever. *Id.* ¶ 30. Valisure filed a citizen petition with the U.S. Food and Drug Administration ("FDA") summarizing its test results. *Id.* Valisure's test results indicated that,

---

[5] *Id.*

although many of the 108 batches tested contained *no* detectible benzene (including some batches of Suave antiperspirant), about half contained small amounts (including a few lots of Suave antiperspirants).[6] Valisure reported that "[t]here was significant variability from batch to batch, even within a single brand, underscoring the importance of batch-level chemical analysis[.]"[7] The complaint, however, does not identify any specific test results for dry shampoo products, much less the dry shampoo products Turek-Green allegedly used. Turek-Green was diagnosed with ALL in March 2021. Compl. ¶ 65.

The complaint purports to bring causes of action for breach of implied warranty, fraud, negligence, violation of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), unjust enrichment, and punitive damages. *Id*. ¶¶ 40-83.

## LEGAL STANDARD

A court should dismiss a complaint if it fails to set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009). The pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and more than "labels and conclusions." *Iqbal*, 556 U.S. at 678. Neither is it enough for a plaintiff to allege facts "merely consistent with" liability or showing only that entitlement to relief is *possible*. *Id.*; *Twombly*, 550 U.S. at 557. The factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[W]here the well-pleaded facts do not permit the

---

[6] *See Valisure Citizen Petition on Benzene in Body Spray Products*, at 12–17 (Nov. 3, 2021), *available at* https://www.regulations.gov/document/FDA-2021-P-1193-0001 (last visited July 15, 2024). The Court may consider the Valisure citizen petition because it is incorporated by reference in the complaint and integral to the claims, and because it is a matter of public record, available on a government website. *Epcon Homestead*, 62 F.4th at 885; *Sierra Club v. U.S. Dep't of the Interior*, 899 F.3d 260, 276 n.4 (4th Cir. 2018).

[7] Valisure Citizen Petition, at 8.

court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## ARGUMENT

### I. The complaint fails to plausibly allege that any Unilever product caused Plaintiff's injury.

Causation is an essential element of each of Turek-Green's causes of action.[8] The complaint fails to allege causation because Turek-Green has not adequately pled that any Unilever product she used contained benzene or contained an amount of benzene sufficient to cause her to develop ALL. Accordingly, each of her causes of action fails to state a claim.

#### A. Plaintiff has not plausibly alleged that she used any Unilever products that contained benzene.

As a threshold matter, Turek-Green's claims fail because she has not alleged that any of the Unilever dry shampoo products she used contained benzene. Turek-Green alleges that she used four Unilever dry shampoo products, but she does not allege facts showing that any of the aerosol cans she used were contaminated with benzene. Turek-Green also fails to allege that she tested the cans she used for benzene. Instead, she only assumes the products she purportedly used contained benzene because Unilever recalled selected lots of dry shampoo products in October 2022. The complaint does not allege which recalled dry shampoos were found to contain benzene.

---

[8] *See Presnell v. Snap-On Securecorp, Inc.*, 583 F. Supp. 3d 702, 712 (M.D.N.C. 2022) (implied warranty); *Watkins v. Soprema, Inc.*, 2013 WL 1727460, at *4 (W.D.N.C. Mar. 27, 2013) (fraud); *Beaver v. Pfizer Inc.*, 2024 WL 234725, at *3 (W.D.N.C. Jan. 22, 2024) (negligence); *Champion Pro Consulting Grp., Inc. v. Impact Sports Football, LLC*, 845 F.3d 104, 109 (4th Cir. 2016) (UDTPA).

A recall is not evidence that Turek-Green bought products containing benzene, as a Georgia federal court recently found in a substantially similar case. In *Cascio v. Johnson & Johnson*, 2024 WL 693489 (N.D. Ga. Feb. 20, 2024), the plaintiff alleged that she developed ALL from using Neutrogena Beach Defense sunscreen contaminated with benzene. Johnson & Johnson ("J&J") recalled all lots of Neutrogena aerosol sunscreen product lines, including the Beach Defense line, after Valisure found high levels of benzene in several brands and batches of sunscreen, including some made by J&J. The plaintiff alleged that she used Beach Defense sunscreens from 2016 until July 2021 when J&J recalled them. *Id.* at *1. J&J moved to dismiss on the ground that the plaintiff failed to show she bought products containing benzene. The court agreed and dismissed the action for failure to allege causation. *Id.* at *2.

The court found that the plaintiff's reliance on J&J's voluntary recall and a citizen petition Valisure submitted to FDA was insufficient. J&J's recall notice stated that the company's internal testing "identified low levels of benzene in some samples of the products." *Id.* at *3. But the court concluded it could not "reasonably infer from this statement … that any of the sunscreens used by [the plaintiff] were among the samples that contained benzene." *Id.* "[A] recall of a product is not evidence of a defect," the court held. *Id.* (collecting cases)[9]; *see Brief v. Idelle Labs., Ltd.*, 2023 WL 2860345, at *3 (D.N.J. Apr. 10, 2023) (same, and finding that recall of the same type of antiperspirant did not show plaintiff bought from a contaminated lot). The court further held that "Valisure's finding that one batch of the Neutrogena Beach

---

[9] *See Garcia v. Volkswagen Grp. of Am., Inc.*, 2022 WL 2542291, at *9 (E.D. Va. July 7, 2022) ("[E]ven when a specific defect is alleged in a vehicle or other product, a recall notice is not evidence that demonstrates an individual plaintiff's vehicle or product possesses that defect."); *Burbank v. BMW of N. Am., LLC*, 2022 WL 833608, at *9 (D.N.J. Mar. 21, 2022) (explaining that "[a] recall will often be overinclusive" and "the mere existence of a recall does not prove that any individual's vehicle actually contained a nonconformity").

7

Defense SPF 50 contains benzene does not lead to a reasonable inference that the sunscreen [the plaintiff] used also contained benzene." *Cascio*, 2024 WL 693489, at *3. As the court noted, Valisure's petition stated that "[t]here was significant variability from batch to batch, even within a single brand, underscoring the importance of batch-level chemical analysis." *Id.*

Other federal courts have dismissed similar complaints alleging injury from exposure to benzene in personal care products for the same reasons. *See Rooney v. Procter & Gamble Co.*, 2023 WL 1419870, at *4 (E.D. La. Jan. 31, 2023) (Vance, J.) ("Taking plaintiffs' allegations as true, they show … that Rooney used a certain kind of Secret antiperspirant, that Valisure tested some batches of that general type of antiperspirant, two of which contained benzene. [This] does not render plausible plaintiffs' assertion that Rooney herself was exposed to benzene."); *Rooney v. Unilever United States, Inc.*, 2023 WL 3167389, at *3 (E.D. La. Apr. 28, 2023) (Lemmon, J.) (dismissing complaint alleging injury from Suave antiperspirant because Valisure's testing showed that some batches contained benzene while others did not, and plaintiffs did not show that Rooney used a product from a contaminated batch); *Bodle v. Johnson & Johnson Consumer Inc.*, 2022 WL 18495043, at *2 (N.D. Cal. Feb. 24, 2022) (dismissing claims involving Neutrogena sunscreen because plaintiff failed to allege that she used a product from a batch that Valisure found to contain benzene); *Brief*, 2023 WL 2860345, at *2 (dismissing complaint when many of the antiperspirant batches tested by Valisure did not contain benzene).

Turek-Green's allegations are even weaker than the above dismissed complaints. She does not identify *any* test results for Unilever dry shampoo products, much less for the specific products she used. Thus, her claims are even more speculative. Turek-Green's reliance on Unilever's voluntary recall is also misplaced. As *Cascio* found, Unilever's "recall notice alone cannot support a plausible inference that the [products] [Turek-Green] used contained benzene."

8

*Cascio*, 2024 WL 693489, at *2. Unilever's recall notice states that it "issued a voluntary product recall … of *select lot codes* of dry shampoo aerosol products … due to *potentially* elevated levels of benzene."[10] (emphasis added). Unilever further stated that it was recalling the products "out of an abundance of caution."[11] As *Cascio* and the other cited authorities explain, recalls are often overinclusive and in no way indicate that a particular product is defective. The complaint's sole reliance on Unilever's voluntary recall is not enough to show that any Unilever product Turek-Green used contained benzene. The federal pleading standard demands more than just the *possibility* that Unilever's products may have caused Turek-Green's injury. *Iqbal*, 556 U.S. at 678. Because each cause of action alleged requires Turek-Green to allege facts plausibly showing that Unilever's products caused her injury, each fails to state a claim.

> B. <u>Plaintiff has not plausibly alleged that she was exposed to benzene from Unilever's products in sufficient amounts and for a sufficient duration to cause her to develop ALL</u>.

Even if Turek-Green had shown she used a Unilever product that contained benzene she has not shown that any level of benzene to which she could have been exposed was capable of causing her ALL. As a result, the complaint fails to allege causation. The complaint cites to a Centers for Disease Control ("CDC") website, which states that "[l]ong-term exposure to high levels of benzene in the air can cause leukemia[.]" Compl. ¶ 23 n.4. But the complaint does not allege how frequently Turek-Green used the products or over what time period, nor does it identify the amount of benzene that was found in *any* Unilever dry shampoo product, much less the products Turek-Green used. *Bodle*, 2022 WL 18495043, at *2 ("Plaintiff does not allege the frequency or amount that she used Defendant's allegedly contaminated products."). Turek-Green

---

[10] Note 2, *supra*.

[11] *Id.*

also does not allege that Unilever's products *consistently* contained benzene (i.e., across all batches tested), or that the benzene contamination occurred over a long time period. Rather, the complaint only refers to events that occurred in July 2021 through 2022. Turek-Green was diagnosed with ALL in March 2021. Compl. ¶ 65. The complaint contains no allegations showing that Turek-Green was exposed to high levels of benzene (or any benzene) from Unilever's products, and for extended periods, before March 2021. For all these reasons, the complaint fails to plausibly allege that Turek-Green's use of Unilever's products caused her to develop ALL.

**II.     Plaintiff's implied-warranty claim also fails because she not shown the products were defective or failed to work as intended.**

The implied warranty of merchantability requires sellers to provide goods that are "fit for the ordinary purpose for which such goods are used." *Presnell v. Snap-On Securecorp, Inc.*, 583 F. Supp. 3d 702, 712 (M.D.N.C. 2022) (citing N.C. Gen. Stat. § 25-2-314(2)(c)). Under this warranty, goods must possess "a minimum level of quality." *Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 623 (M.D.N.C. 2006). A claim for breach of this warranty requires, among other things, a showing that the product was defective at the time of sale. *Presnell*, 583 F. Supp. 3d at 712. Turek-Green does not allege that Unilever's products failed to work as intended (i.e., to freshen and remove oil from hair), and the complaint fails to plausibly allege that any Unilever product Turek-Green bought even contained benzene, let alone at harmful levels. Accordingly, the complaint does not state a claim for breach of the implied warranty of merchantability for these additional reasons.

**III.     Plaintiff's fraud claim also fails because it does not satisfy Rule 9(b)'s particularity requirement or show a duty to disclose existed.**

To plead fraud sufficiently, a complaint must allege: "(1) the false representation or concealment of a material fact; (2) that is reasonably calculated to deceive; (3) is made with the intent to deceive; (4) does in fact deceive the plaintiff; and (5) damages that result from the false representation or concealment." *Watkins v. Soprema, Inc.*, 2013 WL 1727460, at *4 (W.D.N.C. Mar. 27, 2013) (quoting *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 189 (4th Cir. 2007)). "In the case of fraudulent concealment, 'the plaintiff must additionally allege that … the defendant[] had a duty to disclose material information to him as silence is fraudulent only when there is a duty to speak.'" *Ratcliff v. Am. Honda Motor Co.*, 2018 WL 3542865, at *2 (M.D.N.C. July 23, 2018) (quoting *Breeden v. Richmond Cmty. Coll.*, 171 F.R.D. 189, 194 (M.D.N.C. 1997)). In addition, Rule 9(b) requires the plaintiff to plead with particularity the circumstances constituting fraud, including "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013). The complaint fails to satisfy these requirements.

Turek-Green alleges that Unilever intentionally failed to disclose the presence of benzene. *See* Compl. ¶¶ 52-55. As an initial matter, Turek-Green fails to allege with specificity which Unilever product labels she read, or when and where she read them. The complaint alleges only that "[a]fter reviewing the product labels, Plaintiff purchased a number of dry shampoo products, including [the four products at issue] multiple times over the years leading up to the October 18, 2022 recall." *Id.* ¶ 36. This does not satisfy Rule 9(b).

The complaint also fails to allege that Unilever had a duty to disclose in these circumstances. "North Carolina requires a relationship of trust or confidence to support a finding of duty to disclose, based on a fiduciary relationship, a contractual relationship, or other similar

11

relationship." *Ratcliff*, 2018 WL 3542865, at *3 (citing *Burnette v. Nicolet, Inc.*, 818 F.2d 1098, 1101 (4th Cir. 1986)); *Breeden*, 171 F.R.D. at 194. No such relationship existed here. *See Parker Excavating, Inc. v. Highlands at Cullowhee, LLC*, 2021 WL 1176771, at *5 (W.D.N.C. Mar. 29, 2021) ("Contracting parties in a commercial transaction are not in a relationship of trust and confidence."). Not only were these routine commercial transactions, Unilever never sold any products at issue directly to Turek-Green.

Moreover, the complaint does not allege that Unilever learned about a risk of benzene contamination until July 2021, which was four months *after* Turek-Green was diagnosed with ALL. *See* Compl. ¶¶ 29, 32, 52, 65. Accordingly, Turek-Green's injury could not have resulted from any concealment of this information.

To the extent the complaint purports to allege affirmative misrepresentations by Unilever, that allegation is entirely conclusory and pled on information and belief. *See* Compl. ¶ 35 ("[U]pon information and belief, Unilever provided false, misleading, and incomplete representations of the safety of the Recalled Products to consumers, including Plaintiff[.]"). The complaint does not identify any statement Unilever made to Turek-Green, much less any that was false, reasonably calculated and intended to deceive, or which she relied upon in using Unilever's products. Moreover, Turek-Green may not plead fraud on information and belief because that does not satisfy the particularity requirements of Rule 9(b). *Kitchen v. Farrell Log Structures LLC*, 2008 WL 11508995, at *1-2 (W.D.N.C. Nov. 13, 2008).

### IV.    Plaintiff's negligence claim fails for other reasons.

When a negligence claim is premised on failure to warn, the plaintiff "must plausibly allege that the defendant unreasonably failed to provide an adequate warning, such failure was the proximate cause of the plaintiff's damages, and the product posed a substantial risk of harm

12

without an adequate warning[.]" *Asby v. Medtronic, Inc.*, 673 F. Supp. 3d 787, 794 (E.D.N.C. 2023) (cleaned up). The complaint fails to allege facts showing that any failure to warn was the proximate cause of Turek-Green's ALL. As discussed, the complaint does not allege that Unilever learned about a risk of benzene contamination until July 2021, which was months after her diagnosis. *See* Compl. ¶¶ 29, 32, 52, 65. Nor does the complaint allege that the product "posed a substantial risk of harm" without a warning. For the reasons discussed, the complaint does not show that the products Turek-Green bought contained benzene, much less at any harmful levels.

Turek-Green's allegation that Unilever was negligent in not recalling the products and addressing the contamination in a timely manner also fails. Again, Turek-Green does not allege that Unilever learned about a risk of benzene contamination until after she was diagnosed in March 2021, thus an earlier recall would not have prevented her injury.

Finally, the complaint's allegations that Unilever failed to comply with "applicable" regulations pertaining to labeling, testing, and safety fall short. First, the complaint fails to identify any regulation Unilever violated. Second, any claim premised on the failure to comply with regulations promulgated under the Federal Food, Drug, and Cosmetic Act ("FDCA") is impliedly preempted. *Burrell v. Bayer Corp.*, 260 F. Supp. 3d 485, 491 (W.D.N.C. 2017) ("[T]he Supreme Court has [] held that state law claims are impliedly preempted under the FDCA, if the state law violation was solely based on a violation of the FDCA.") (citing *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 353 (2001)); *see* 21 U.S.C. § 337(a) ("[A]ll such proceedings for the enforcement, or to restrain violations, of [the FDCA] shall be by and in the name of the United States."); *Buckman*, 531 U.S. at 349 n.4. "[P]rivate litigants may not bring a state-law claim against a defendant when the state-law claim is in substance (even if not in form)

13

a claim for violating the FDCA." *Exela Pharma Sciences, LLC v. Sandoz, Inc.*, 486 F. Supp. 3d 1001, 1012 (W.D.N.C. 2020) (citation omitted). Stated differently, when, as here, the claim "would not exist absent the federal regulatory scheme established by the FDCA," it is barred by section 337(a). *Id.* (citation omitted).

## V.     Plaintiff's UDTPA claim fails for other reasons.

To violate the UDTPA, conduct "must be immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Champion Pro Consulting Grp., Inc. v. Impact Sports Football, LLC*, 845 F.3d 104, 109 (4th Cir. 2016). The UDTPA "was not meant to encompass all business activities or all wrongdoings in a business setting." *Id.* (citing *Wilson v. Blue Ridge Elec. Membership Corp.*, 578 S.E.2d 692, 694 (N.C. Ct. App. 2003)). A plaintiff "must demonstrate 'some type of egregious or aggravating circumstances.'" *Id.* (quoting *Wilson*, 578 S.E.2d at 694). The complaint alleges, without specificity, that Unilever committed unfair and deceptive acts by "intentionally and negligently failing to warn Plaintiff," "failing to timely take action to remedy the contamination of the Recalled Products," and "failing to appropriately label the Recalled Products." Compl. ¶ 72. For the reasons already discussed in sections III and IV, these allegations do not state a claim for fraud or negligence. The complaint contains no additional facts that would transform these same (flawed) allegations into the "egregious circumstances" necessary for a UDTPA claim.

## VI.    Plaintiff's unjust-enrichment claim fails.

The complaint also fails to state a claim for unjust enrichment. First, although Turek-Green purports to bring her unjust-enrichment claim in the alternative, her unjust-enrichment count incorporates all of the prior allegations in the complaint. *See* Compl. ¶ 77. Those allegations include Turek-Green's claim for breach of implied warranty, which flows from the

sale of goods and sounds in contract. *See* Compl. ¶¶ 40-49; *Philips v. Restaurant Mgmt. of Carolina, L.P.*, 552 S.E.2d 686, 692 (N.C. Ct. App. 2001) ("The nature of a claim for breach of an implied warranty of merchantability is contractual."). North Carolina law does not allow unjust-enrichment claims when the plaintiff alleges the existence of a contractual relationship. *Reaves v. Seterus, Inc.*, 2015 WL 2401666, at *4 (E.D.N.C. May 20, 2015) ("Although Federal Rule of Civil Procedure 8(d) allows parties to plead claims in the alternative, plaintiff has failed to do so. Plaintiff's unjust enrichment claim expressly incorporates all other allegations made in the complaint, which include the existence of an alleged contract."); *Davidson Cotton Mexico, S. der L. de C.V. v. Tekmatex, Inc.*, 2006 WL 2828841, at *5 n.2 (W.D.N.C. Sept. 29, 2006) (same); *see also Ron Medlin Constr. v. Harris*, 704 S.E.2d 486, 493 (N.C. 2010) ("[A]s a matter of law, plaintiff Medlin Construction has a contractual relationship with defendants and thus, cannot recover in *quantum meruit*.").

Second, the unjust-enrichment claim fails because Turek-Green has not shown Unilever was unjustly enriched. For the same reasons discussed previously as to Turek-Green's other causes of action—which are based on the same allegations—the complaint fails to show that it was unjust for Unilever to retain the money from the sale of the products. Turek-Green paid for products designed to refresh hair on days in between washings and she has not alleged that the products failed to work as intended. Nor has she plausibly shown that any of the products she bought contained benzene or harmed her. Moreover, although Turek-Green alleges that Unilever obtained the sales revenue for the products "fraudulently, namely by selling and accepting compensation for products labeled and marketed as safe for their intended use" (Compl. ¶ 81), she fails to identify any safety-related statement she saw on a product label or advertisement, to identify the particular product or advertisement, or to state when and where she saw such

15

statement, as Rule 9(b) requires for fraud-based claims. Nor has Turek-Green adequately pled the products she bought were not safe.

Finally, unjust enrichment is equitable in nature and equitable remedies are not available when, as here, the plaintiff has an adequate legal remedy. *See Simontacchi v. Invensys, Inc.*, 2008 WL 141905, at *17 (W.D.N.C. Jan. 11, 2008) (dismissing claim for equitable relief when party failed to allege that its legal remedies were inadequate); *Embree Constr. Grp., Inc. v. Rafcor, Inc.*, 411 S.E.2d 916, 920 (N.C. 1992) ("The court's equitable intervention is obviated when an adequate remedy at law is available to the plaintiff[.]"); *Jones Cooling & Heating, Inc. v. Booth*, 394 S.E.2d 292, 293-94 (N.C. Ct. App. 1990) (holding that existence of a legal remedy barred equitable claim).

**VII.   The complaint does not allege facts supporting a claim for punitive damages.**

As an initial matter, "[u]nder North Carolina law, there is not an independent cause of action for punitive damages." *Ospina v. Griesinger Assocs., Inc.*, 2022 WL 18739, at *5 (W.D.N.C. Jan. 3, 2022) (citing *Hawkins v. Hawkins*, 400 S.E.2d 472, 475 (N.C. Ct. App. 1991)). The complaint purports to bring a stand-alone cause of action for punitive damages, and, accordingly, it should be dismissed. *Levy v. Infilaw Corp.*, 2017 WL 3573825, at *6 (W.D.N.C. Aug. 17, 2017) (dismissing punitive damages claim on this ground).

Even if the Court considers the claim, however, it fails. To recover punitive damages, a plaintiff must show that the defendant is liable for compensatory damages and that an aggravating factor of fraud, malice, or willful or wanton conduct was present and related to the plaintiff's injury. *DeRose v. DoorDash, Inc.*, 675 F. Supp. 3d 591, 605 (E.D.N.C. 2023); N.C. Gen. Stat. § 1D-15(a). Turek-Green's punitive damages claim fails at the threshold because the complaint fails to state a claim for relief against Unilever.

16

The punitive damages claim also fails on the merits. The complaint alleges that Unilever committed "egregiously wrongful actions consisting of fraud and willful or wanton conduct by intentionally concealing and misrepresenting the safety of the Recalled Products, failing to timely remedy the contamination of the Recalled Products, [and] failing to appropriately label the Recalled Products[.]" Compl. ¶ 75. As set forth in section III above, the complaint fails to state a claim for fraud, under either a concealment or affirmative misrepresentation theory. Nor does the complaint allege any willful or wanton conduct. "Willful or wanton conduct" is "the conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage, or other harm." N.C. Gen. Stat. § 1D-5(7). The complaint fails to allege any intentional disregard of Turek-Green's safety, particularly in light of Turek-Green's allegation that Unilever did not learn about a risk of benzene contamination until months after she was diagnosed with ALL. *See* Compl. ¶¶ 29, 65.

Because Unilever is a corporation, the complaint must allege that "the officers, directors, or managers of the corporation participated in or condoned the conduct constituting the aggravating factor giving rise to punitive damages." N.C. Gen. Stat. § 1D-15(c). In other words, "[t]o survive a motion to dismiss, Plaintiff must plead sufficient facts to support a plausible claim that at least one of the officers, directors, or managers of [Unilever] acted with or condoned 'willful and wanton' conduct with regards to this incident." *Estrada v. Consol. Utility Servs., Inc.*, 2011 WL 2174467, at *2 (W.D.N.C. June 2, 2011). The complaint contains no such facts. As a result, the punitive damages claim must be dismissed.

17

## CONCLUSION

For all these reasons, Defendant Unilever United States, Inc. requests that the Court dismiss Plaintiff's Complaint.

DATED: July 18, 2024

Respectfully submitted,

**WOOD SMITH HENNING & BERMAN, LLP**

*/s/ William W. Silverman*
William W. Silverman (NC Bar No. 38511)
Clayton D. Goris (NC Bar No. 57440)
3700 Glenwood Avenue, Suite 330
Raleigh, NC 27612
(984) 900-5960
wsilverman@wshblaw.com
cgoris@wshblaw.com

*Counsel for Unilever United States, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of July, 2024, a true and correct copy of the foregoing document was served upon all counsel of record via the Court's electronic filing system and/or electronic mail.

*/s/ William W. Silverman*